**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

ANGELA MARIE BAIN BIRKE, etc.,    )
    )
               Plaintiff,    )
    )
vs.    )     **Case No. 4:08CV1607MLM**
    )
UNITED STATES OF AMERICA,    )
    )
               Defendant.    )

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS**

Plaintiff submits this Memorandum of Law in opposition to the Defendant United States Government's "Partial Motion to Dismiss" the action. That Motion incorrectly raises two purported jurisdictional grounds. It contends that Plaintiff's Complaint is insufficient because the airman who negligently collided with Plaintiff's decedent Mark Birke, her 31-year-old late husband and the father of their then-16-month-old son M.D.B., on a United States Air Force base, was somehow not in the scope of his employment and line of duty. It also contends that the negligent conduct of other members of the United States Air Force escorting Mark Birke and his tour group, which placed Mark Birke in a position of peril, involved "discretionary functions" within the meaning of 28 U.S.C. § 2680(a), and was therefore outside the scope of the Federal Tort Claims Act ("FTCA") waiver of the Government's sovereign immunity. Neither the facts nor the law supports the Government's position on either issue.

Plaintiff's allegations fully meet the requirements both for Federal pleading and under the substantive Florida law governing the scope of employment issue. *See*, *e.g.*, **United Technologies Corporation v. Mazer**, 556 F.3d 1260 (11th Cir. 2009)**; Ashworth v. United States**, 772 F.Supp.

1268 (S.D.Fla. 1991)**; *Thurston v. Morrison*, 141 So.2d 291 (Fla.App.2.Dist. 1962). Cases in the Eighth Circuit and other Federal courts have found the "discretionary function" defense inapplicable to analogous situations where, as here, agencies failed properly to implement the ordinary safety precautions to which they were committed for the protection of the public. *See*, *e.g.*, *Aslakson v. United States*, 790 F.2d 688 (8th Cir. 1986)**; *Mandel v. United States*, 793 F.2d 964 (8th Cir. 1986)**; *Andrulonis v. United States*, 952 F.2d 652 (2d Cir. 1991)**; *Cope v. Scott*, 45 F.3d 445 (D.C.Cir. 1995)**; *Bear Medicine v. United States*, 241 F.3d 1208 (9th Cir. 2001)**; *Wright v. United States*, 866 F.Supp. 804 (S.D.N.Y. 1994)**; *Noel v. United States*, 893 F.Supp. 1410 (N.D.Cal. 1995). The Motion should be denied in its entirety, and the case should be permitted to proceed to trial.

*Statement of Facts*

Plaintiff's Complaint alleges that her husband, Mark Birke, a 31-year-old civilian from Webster Groves, Missouri, traveled to Eglin Air Force Base, Florida with a tour group of the F-4 Phantom II Society, a private entity consisting of United States citizens and foreign nationals who promote interest in military aviation. The Society had arranged with the Air Force for the tour group to view flight operations at the air base. The Air Force provided two active duty commissioned officers as escorts for the tour group. On the morning of October 19, 2006, those officers instructed the group members to exit from their tour buses at a location adjacent to Eglin Boulevard, the main multi-lane highway running through the air base--the fourth location chosen by Air Force personnel in planning the tour, after others had been turned down by Air Force authorities--where the tour group could watch and photograph the airplanes operating along the nearby runway on the other side of Eglin Boulevard. (Complaint, Paragraphs 7-11.)

Plaintiff further alleges that at approximately 9:30 a.m. on October 19, 2006, an automobile owned by Airman Uyen Thach and operated by her boyfriend, 19 year old Airman Brett Jakubowski, drove off Eglin Boulevard onto the grassy area where the members of the tour group were situated. The automobile struck Mark Birke and another civilian. The impact was so strong it severed Mark Birke's right leg just below the knee, throwing them a substantial distance from the point of impact. The automobile, which was traveling approximately 62 miles per hour in a 45 miles per hour zone, then swerved back onto Eglin Boulevard and collided with an Air Force fuel truck. Airman Jakubowski, the automobile's sole occupant, was declared dead at the scene. After paramedics arrived, Mark Birke was eventually placed in a civilian Life Flight emergency helicopter and transported to Baptist Hospital in Pensacola, Florida, where he was treated for his injuries until his death on October 20, 2006. (Complaint, Paragraphs 11-15.)

The Complaint also alleges (in its Paragraphs 16-19) that approximately two weeks before the fatal occurrence of October 19, 2006, Airman Jakubowski had received an "Article 15" non-judicial punishment from his commanding officer in the Air Force for the offense of possession of alcohol by a minor. Airman Jakubowski was sentenced to 30 days of additional duty, in 12-hour shifts, 7 days a week, as well as reduction in pay grade and forfeiture of pay, and in addition to his regular duties as a medical technician at the base hospital, he was ordered to perform more strenuous manual labor at the end of his regular work day. These extra duty hours apparently began on October 11, 2006, so that on October 19, 2006, he was working his ninth consecutive 12-hour day. Airman Jakubowski, who lived in the same dormitory on Eglin Air Force Base as his girlfriend Airman Thach, was getting little sleep at night during his period of extra duty. His supervisor at the base hospital, Staff Sergeant Larrilyn Darif, knew or should have known that Airman Jakubowski was

becoming progressively more tired at his work at the hospital after he began serving his extra duty punishment.

As the Complaint further alleges (in Paragraphs 20 and 21), Staff Sergeant Darif nonetheless gave express permission on the morning of October 19, 2006 to Airman Jakubowski--who did not own a motor vehicle himself, but had used his girlfriend's automobile that morning to drive himself from the dormitory to his duty station--to leave the hospital, pick up Airman Thach at her quarters on the Air Force base, and bring her back to that same base hospital, where Airman Thach herself worked.  Prior to his departure from the hospital for that purpose on the morning of October 19, 2006, Staff Sergeant Darif suggested that Airman Jakubowski take a "smoke break," because of his increased fatigue and lack of alertness; but the Staff Sergeant took no other remedial action, and neither refused to grant Airman Jakubowski permission to operate a motor vehicle, nor ordered him not to operate a motor vehicle.

Plaintiff has additionally alleged, in Paragraphs 22-24 of the Complaint, that Airman Thach had a brief appointment scheduled at 10:00 a.m. on October 19, 2006, in the base hospital to have a pap smear medical test performed before going to her office.  The day before, Airman Thach had volunteered to drive "the Commander" (apparently the base hospital commander) to Tyndall Air Force Base on October 19  for the Non-Commissioned Officers Academy graduation later that day. Airman Thach's supervisor had ordered her to report to work later than usual in the morning on October 19, because the supervisor did not want Airman Thach to become overly tired and fall asleep while driving the Commander to and from Tyndall Air Force Base.  Plaintiff therefore alleges that Airman Jakubowski, who never left the premises of Eglin Air Force Base on October 19, 2006, was to resume his duties as a medical technician at the base hospital after completing his brief mission

to pick up another airman so that she could (1) undergo her required medical test,[1] (2) perform her duties at the base hospital, and (3) drive her Commander to and from a graduation at another Air Force base, which would have been part of both her duty and the Commander's duty.

Paragraph 28 of Plaintiff's Complaint, then, sets out three separate theories of recovery against the Government under the FTCA, based on the actions of Air Force servicemen and servicewomen who are alleged in Paragraphs 2, 21, 24, 27, and elsewhere in the Complaint to have been in the line of duty and the scope and course of their employment as members of the Air Force**:**

(I)  The assigned escort officers for the F-4 Phantom II Society tour group, including commissioned officers Major Craig Marion and Captain Seajung Park, carelessly and negligently exercised improper control of a group or crowd of invitees to Eglin Air Force Base, to whom they owed a duty of care, by selecting a location immediately adjacent to a busy highway, Eglin Boulevard, as the site to view aircraft flight operations across the highway, and directing and escorting the members of the group to that location, although the escort officers and other United States Air Force superiors and subordinates knew or should have known that location was a position of peril, without barriers or curbs to protect the group from a motor vehicle which might run off the roadway, and without sufficient personnel to control the group while it was focused on viewing the aircraft flight operations.  Plaintiff has specifically alleged that those actions and omissions by Air Force personnel did not constitute public policy decisions based on considerations of social, economic, or political policy, but merely implemented and executed the prior specific decisions by the Air Force to accommodate, host, and escort the members of the particular F-4 Phantom II Society

---

[1]  As is commonly known, service members are required to undergo medical testing in the line of duty in order to be fit for service.

tour group which included Mark Birke, and to place that group at a safe and appropriate location to view aircraft flight operations at Eglin Air Force Base on October 19, 2006.

(II)  Airman Jakubowski carelessly and negligently failed to use the highest degree of care required when operating an automobile on October 19, 2006, in that (i) he failed to keep a careful lookout; (ii) he drove at an excessive speed, in excess of the posted speed limit of 45 miles per hour; (iii) he drove at an excessive speed which was too fast for then existing conditions; (iv) he drove off the traveled portion of the roadway into a pedestrian area; (v) he drove an automobile when he knew or should have known he was overly tired and insufficiently alert; (vi) he fell asleep or became inattentive while operating an automobile, thereby causing it to travel off the roadway and strike Mark Birke; and (vii) when he knew or could have known there was a reasonable likelihood he would strike Mark Birke and/or other members of the group or crowd at the side of the highway, he failed to stop, swerve, slacken speed, sound a warning, slacken speed and swerve, slacken speed and sound a warning, or swerve and sound a warning.

(III)  Staff Sergeant Darif, the immediate military supervisor of the 19-year-old Airman Jakubowski at the Eglin Air Force Base hospital, knew or should have known that her subordinate, who was in his ninth consecutive day of 12 hour work shifts as a punishment, was overly tired, insufficiently alert, and unfit to operate a motor vehicle within the confines of Eglin Air Force Base on the morning of October 19, 2006, but carelessly and negligently supervised him at that time by granting his request for specific permission to drive back to the dormitory to pick up Airman Thach and transport Airman Thach to the base hospital, and did not order him not to operate a motor vehicle. Plaintiff has also specifically alleged that such actions and omissions of Staff Sergeant Darif did not constitute public policy decisions based on considerations of social, economic, or political

policy, but merely implemented and executed the prior specific decisions by the United States Air Force to assign Airman Jakubowski to be stationed as a technician, including his thirty day Article 15 punishment duty, at the Eglin Air Force Base Hospital, and therefore to be supervised and controlled by military superiors including Staff Sergeant Darif at the hospital.  Plaintiff has also alleged that the negligent supervision of Airman Jakubowski by Staff Sergeant Darif, in the course and scope of Staff Sergeant Darif's own employment and line of duty, made the Government liable for the death of Mark Birke, regardless of whether Airman Jakubowski was himself in the course and scope of his employment and line of duty at the time he struck Mark Birke.  The Government's present Motion is not seeking dismissal of this third aspect of the case.

The Government has already filed an Answer to Plaintiff's Complaint, admitting many of the Complaint's allegations (including all or part of Paragraphs 9, 11-17, and 19-24), but also pleading as defenses the alleged absence of subject matter jurisdiction under 28 U.S.C. § 2860(a), based on the theory that all of the Government's conduct of which Plaintiff complains "was a discretionary function for which the United States has not waived its sovereign immunity," and Plaintiff's supposed failure to state a cause of action.  The Answer denies that the Air Force personnel in question were acting within the scope of their employment.

The Government--which, unlike Plaintiff, has had access to all the Air Force witnesses and evidence since the occurrence of October 19, 2006--has also chosen to file with its "Partial Motion to Dismiss" extensive exhibits.  The exhibits add detail but do not substantially contradict the factual allegations of Plaintiff's Complaint--although the Government's Memorandum in support of the Motion engages in some argumentative characterization of the facts, particularly where it concludes that Airman Jakubowski's travel to pick up Airman Thach from her quarters and return her to the

base hospital (and, incidentally, to pick up his cell phone from her room) was a mere "personal

errand," and that "Air Force policy drove" its "activities and decisions" regarding the tour.

*Argument*

     1. The Applicable Standards for the Motion to Dismiss.  By characterizing both of the issues

that the Motion raises as "jurisdictional," under Federal Rule of Civil Procedure 12(b)(1), rather than

as a failure to state a claim under Rule12(b)(6), the Government avoids treating either aspect of the

Motion as one for summary judgment under Rule 56, notwithstanding its filing of the exhibits.  But

a careful reading of the relevant case law shows that the scope of employment issue is not in this

sense jurisdictional.  The primary FTCA cases the Government cites on the point, ***Primeaux v.

United States***, 181 F.3d 876 (8th Cir. 1999), and ***St. John v. United States***, 240 S.W.3d 671 (8th Cir.

2001), in which the scope of employment issues were decided after full trial rather than on motions

to dismiss, do not hold it is a jurisdictional matter, nor do any of the Government's other authorities.

To the contrary, ***St. John*** specifically found the court's jurisdiction proper before reaching the scope

of employment issue.  *Id.* at 674**;** *cf.* ***Primeaux***, *supra*, at 883 (Lay, J., dissenting), footnote 4.

     Since the scope of employment issue is not jurisdictional, Plaintiff does not have any burden

of proof or producing evidence on it at this time, in response to the "Partial Motion to Dismiss."

But, in fact, the evidence the Government has submitted in its Exhibits A-L, and described in its

Memorandum at pages 2-4, is itself sufficient not only to prevent dismissal of the Complaint on its

face, but actually to establish that Airman Jakubowski was within the scope of his employment--even

if the Motion is evaluated by the standards of summary judgment.  ***Ashworth v. United States***,

*supra***;** ***St. Paul Guardian Insurance Company v. United States***, 117 F.Supp.2d 1349 (S.D.Fla.

2001)**;** ***Masconi v. Regueiro***, 778 So.2d 471 (Fla.App.3.Dist. 2001)**;** ***Thurston v. Morrison***, *supra*.

The discretionary function issue is jurisdictional, and the Court may consider it under Rule 12(b)(1)**;** but the Government's citations of ***Bellecourt v. United States***, 994 F.2d 427 (8th Cir. 1993), ***Osborn v. United States***, 918 F.2d 724 (8th Cir. 1990) and ***Crawford v. United States***, 796 F.2d 924 (7th Cir. 1986), which address other, facial FTCA jurisdiction issues, do not control the outcome here.  Plaintiff has the burden of proof on jurisdiction generally, but most courts have held the burden of proving the applicability of the discretionary function exception is on the Government. ***Cestonaro v. United States***, 211 F.3d 749 (3rd Cir.2000)**;** ***Noel v. United States***, *supra*.  (The Eighth Circuit apparently has not yet addressed the question.)  Whoever has the burden, Plaintiff's claims in this case meet it**:**  the negligent acts and omissions at issue here were *not* discretionary functions, a conclusion supported, not refuted, by the Government's exhibits and by such authority as ***Aslakson v. United States***, ***Cope v. Scott***, ***Bear Medicine v. United States***, and ***Noel v. United States***, *supra*.

2.  The Scope of Employment Issue.  The FTCA waives the Government's sovereign immunity and makes it liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.  The Federal courts have original jurisdiction of FTCA claims for money damages "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).  Whether Federal employees--including military personnel--were acting within the scope and course of their employment and line of duty, making the Government liable for their tortious conduct, is among the issues governed by the applicable state's law, notwithstanding the provision of 28 U.S.C. § 2671 that "'Acting within the scope of his office or employment,' in the case of a member of the military, ... means acting in line of duty." ***Williams v. United States***, 350 U.S. 857 (1955), *reversing* 215 F.2d 800 (9th Cir. 1954)**;** ***Robbins v. United States***, 722 F.2d 387 (8th Cir. 1983)**;** ***Ashworth v. United States***, *supra*.  All the acts of the members

of the Air Force which contributed to cause Mark Birke's fatal injury and death occurred in the State of Florida, whose substantive law therefore controls this case.

Plaintiff's Complaint complies on its face with the standard for pleading in a Federal case, under Federal Rule of Civil Procedure 8(a)(2), that a person acted within the scope of his employment under Florida law. ***United Technologies Corporation v. Mazer***, *supra*, has recently defined that standard. Mazer, the president of a corporation called West-Hem, had allegedly bribed someone to steal and sell valuable aircraft blueprints from the plaintiff, United Technologies ("UTC"). The issue was whether UTC had pleaded sufficient factual allegations to support its claim that West-Hem, Mazer's corporate employer, was liable for his tortious acts. The Eleventh Circuit, noting first that it should take the allegations of the Complaint as true, "construing them in the light most favorable to UTC," *id.* at 1269, 1271, cited the relevant Florida case law establishing that:

> "Under the doctrine of respondeat superior, an employer cannot be held liable for the tortious or criminal acts of an employee, unless the acts were committed during the course of the employment and to further a purpose or interest, however excessive or misguided, of the employer." ... an action falls within the scope of employment if the conduct: (1) is of the kind the employee was employed to perform; (2) occurred within the time and space limits of the employee's employment; and (3) was activated at least in part by a purpose to serve the employment.

West-Hem argued that UTC had failed "expressly" to plead the three elements required for a finding that Mazer's conduct was within the scope of his employment, "and instead relied on conclusory statements of law or mixed law and fact." However, the court held that the complaint's allegations "either incorporate ... or generate an inference of these elements sufficient for notice pleading and to withstand a Rule 12(b)(6) motion to dismiss." *Id.* at 1272. The complaint

> pled facts that, when read together, at least arguably allege (1) that Mazer's conduct in purchasing the blueprints for, and selling them to, one of West-Hem's aviation customers ... could reasonably have been the kind of task for which he was

employed**;** (2) that Mazer acted within the time and space constraints of his employment, i.e., he acted while on duty at West-Hem**;** and (3) that Mazer could reasonably have been acting to serve and benefit West-Hem's business.

The court added that "Discovery to be taken ... may well reveal additional evidence to be used in meeting" UTC's ultimate burden of establishing that Mazer acted within the scope of employment, and "Should West-Hem come forward with evidence that Mazer was in some way not acting within the scope of his West-Hem employment, the jury will have the chance to resolve this question of fact." *Id.*  It permitted the claim to proceed, under the rule of ***Bell Atlantic Corporation v. Twombly***, 550 U.S. 544, at 555 (2007)**:**  "At the pleading stage, we assess only whether UTC's allegations are 'enough to raise a right to relief above the speculative level.'"

In the present case, Plaintiff's allegations that Airman Jakubowski was acting in the line of duty and scope of his employment with the Air Force are at least as explicit as those in ***United Technologies***.  They were not limited merely to conclusions, but included factual allegations demonstrating that, at the time he operated the automobile which struck Mark Birke on the morning of October 19, 2006, he was on active duty with the Air Force, during the course of his work day, within the confines of the air base to which he was assigned, serving and benefitting the interests of the Air Force, with the express permission of his superior, by driving to pick up Airman Thach and return her to her own place of duty at the same base hospital to which he was required to return. Such allegations clearly fall within the applicable Florida case law pertaining to the scope of his employment and line of duty**;** and, at the very least, his actions cannot be held outside it without a full trial on the merits.  *See*, *e.g.*, ***Ashworth v. United States***, *supra***; St. Paul Guardian Insurance Company v. United States***, *supra***; Thurston v. Morrison***, *supra***; Masconi v. Regueiro***, *supra*.

*Ashworth* involved an automobile collision caused by a Coast Guard seaman, traveling with his belongings in a rented vehicle to his new duty station, on a day when he had been granted leave from his prior station, stopped to engage in recreational activities, and anticipated another stop at his mother's house.  The court found the plaintiffs' FTCA claim met the three-part scope of employment test under Florida law, and specifically that the seaman was performing duties "of the kind he was employed to perform," despite the Government's contention that he "was not employed to move furniture, drive trucks, or possess a valid driver's license."  Even if he slightly deviated from the most direct route to his new duty station, "Slight deviations do not relieve an employer of its liability for acts of an employee committed within the scope of employment."  *Id.* at 1272-1273.

*St. Paul*, similarly, involved a Naval reservist driving a private motor vehicle in Florida on the way to a training session.  Citing *Ashworth*, the Federal court found him to be in the scope of employment and line of duty under the FTCA.  *Thurston* involved a car salesman who drove out of town to call on a prospective buyer, attempting to sell either a car owned by the salesman's employer, or one owned personally by the salesman's wife.  The salesman stopped to drink liquor before colliding, on the way home, with the plaintiff's decedent.  The Florida court held the case submissible to the jury on the issue of whether the salesman was within the course and scope of his employment, stating that it was "immaterial" whether he had personal, "concurrent" business on the trip along with the business he was conducting for his employer.  *Masconi* involved a resident agent of an apartment complex, who accidentally threw a burning pot of cooking oil out his door onto a tenant standing there to pay the rent.  The court held the case submissible to the jury, on the theory that the agent was "at least partially motivated by his intent to minimize damage" to his employer's property from the fire.

The Government's attempt to argue that Airman Jakubowski was not within the scope of his employment and line of duty is both legally and factually incorrect. It cites ***Drinnenberg v. State of Florida, Department of Transportation***, 481 So.2d 51, at 52 (Fla.App.2.Dist. 1985), for the uncontroversial "general rule" that "an employee who deviates from his employment to engage in a personal errand is not within the scope of his employment if an accident occurs before he returns to the course he was pursuing in the interest of his employer." But it neglects to mention the actual holding of ***Drinnenberg***, where the court reversed a summary judgment for the employer and permitted a trial on the issue of whether the employee, who had gone to a shopping mall by a "substantial deviation from the most direct route" to his job site before the accident, had nonetheless returned to the scope of employment after leaving the mall.

More importantly, in the present case the facts simply do not support the Government's strained argument that Airman Jakubowski was on a "personal errand" at all, let alone a "purely" personal errand with no purpose to serve the Air Force whatsoever. The facts are that he was on active duty, in the course of his punishment duty, and acting with his supervisor's permission when he left the base hospital to bring to Airman Thach from within the confines of the air base to her duty station at the same hospital, so that she could perform her own Air Force duties. The incidental facts that she happened to be his girl friend and the owner of the vehicle he was allowed to use, and that he would retrieve his cell phone from her room while he did so, did not transform his actions for the benefit of the Air Force to a "purely personal errand." The proof that his primary purpose in traveling back to the dormitory was to serve the interests of the Air Force was that he clearly would not have gone back just to retrieve the cell phone and leave Airman Thach and the car there, nor would he have been permitted to do so. If there was any personal element to his actions at any time

-13-

before he collided with Mark Birke, it was not only minimal but legally immaterial under the standards of **Thurston**, **Ashworth**, **St. Paul** and **Masconi**.  As noted in **Weiss v. Jacobson**, 62 So.2d 904, at 906 (Fla. 1953), the proper test is not the subjective "motive" of the employee, but whether he was objectively within the scope of the "employment contemplated."

Some of the Government's arguments on this issue are quite illogical.  Its contention (at page 10 of its Memorandum) that there was some significance to the supposed refusal of the Attorney General to "find and certify" that Airman Jakubowski was in the scope of his employment under 28 U.S.C. § 2679(d) is a complete red herring, since Plaintiff has never attempted to sue the deceased Airman Jakubowski in his own name, the only circumstance in which that statute applies.  The assertion that the Air Force exerted no further control ... whatsoever" over Airman Jakubowski's actions after he left the hospital (at page 11 of the Memorandum) ignores the obvious reality that he was on active duty, and therefore subject to the Uniform Code of Military Justice, whether or not he remained within the route and purpose for which he had been given express permission by his superior.  **St. Paul**, *supra* at 1354-1355.  It also erroneously tries to substitute for the applicable Florida law a rule from old Missouri cases that "an employer could not be held liable unless he had reserved the right 'to control the physical acts or movements of the employee *at the very moment of the occurrence*.'"  **Robbins**, *supra* at 388.  Where the Government asserts (at page 12 of the Memorandum) there was some significance to the distance of 3 to 3-1/2 miles between the base hospital and Airman Thach's quarters, entirely within the confines of Eglin Air Force Base--a facility approximately one-third the size of Rhode Island--it is desperately grasping at a nonexistent straw.

None of the Government's citations of authority on the scope of employment issue are in any way factually similar to this case, nor do they contradict the controlling authorities cited by Plaintiff.

-14-

Thus, both the factual allegations of the Complaint and the evidence submitted by the Government are fully sufficient to establish that Airman Jakubowski was within his scope of employment and line of duty with the Air Force when he struck and killed Mark Birke on October 19, 2006.  The Complaint cannot properly be dismissed and the case must proceed to trial.

3.  The Discretionary Function Issue.  If the Court finds that Airman Jakubowski was in the line of duty at the time he collided with Mark Birke, the discretionary function issue with regard to the tour escort officers' placement and supervision of the tour group will be of little consequence in this case.  The case law under 26 U.S.C. § 2680(a) conclusively establishes that the negligent operation of a motor vehicle is never a discretionary function, so the issue does not apply to Airman Jakubowski's conduct at all.  *United States v. Gaubert*, 499 U.S. 315, at 325, footnote 7 (1991)**;** *Cope v. Scott*, *supra* at 448-449.[2]

Plaintiff alleges that the Air Force's tour escorts created liability for the Government in this case, under the applicable Florida tort law, by violating their duties of due care as tour guides and by failing properly to control the crowd of F-4 Phantom II Society tour members.  Those duties have been established in such cases as *Kaufman v. A-1 Bus Lines, Inc.*, 416 So.2d 863 (Fla.App.3.Dist. 1982), and *Walker v. Feltman*, 111 So.2d 76 (Fla.App.3.Dist. 1959).  If Airman Jakubowski was himself negligent in the line of duty, deeming the tour escorts' acts and omissions "discretionary

---

[2]    Moreover, only if Airman Jakubowski was *not* driving in the line of duty will it be necessary to determine whether the Florida law of negligent supervision applies to the conduct of Staff Sergeant Darif--as in *Mallory v. O'Neil*, 69 So.2d 313 (Fla. 1954), and *McArthur Jersey Farm Dairy, Inc. v. Burke*, 240 So.2d 198 (Fla.App.4.Dist. 1970)--and only then would it be important to determine if Staff Sergeant Darif's granting him permission to drive (and failure to order him not to drive) a motor vehicle on the base in his exhausted condition was a discretionary function.  This issue is not before the Court on the Government's "Partial Motion to Dismiss."

-15-

functions" under 26 U.S.C. § 2680(a) would not be sufficient to immunize the Government altogether for Mark Birke's death.

But the discretionary function exception to the FTCA's waiver of sovereign immunity does not apply to the tour escorts' conduct (or Staff Sergeant Darif's, which is not at issue here), any more than to Airman Jakubowski's**;** and it certainly cannot be found to apply in the present posture of this case.  In ***Aslakson v. United States***, *supra* at 691, the Eighth Circuit held "The contours of the discretionary function cannot be defined with precision. ... Thus, each case must be analyzed individually based upon relevant criteria in determining whether the acts of government employees are protected from liability under section 2680(a)."  Holding the Government liable for its Western Area Power Administration ("WAPA") employees' negligence in failing to provide adequate vertical clearance for power lines, the court in ***Aslakson*** stated**,** *id.* at 692-693,694-695 [emphasis added]**:**

> The United States claims that any decision by WAPA officials regarding the safety of its power lines is within the scope of the discretionary function exception.  We cannot agree. ***We believe that such an expansive interpretation would result in the exception swallowing the rule.***  This view would immunize from judicial review all government activity except the most ministerial acts. ... "Where the challenged governmental activity involves safety considerations under an established policy rather than the balancing of competing public policy considerations, the rationale for the exception falls away and the United States will be held responsible for the negligence of its employees." ...
>
> Aslakson's challenge to the governmental activity involved here goes not to the policy itself or to the manner in which WAPA chose to implement that policy.  Furthermore, the challenged conduct is neither regulatory in nature nor administrative decision-making grounded in social, economic, or political policy.  Rather, Aslakson claims WAPA officials were guilty of failing to comply with their own safety policy in the maintenance of their electrical transmission lines.  This claim smacks of "ordinary 'garden-variety' negligence," *Chotin Transportation, Inc. v. United States*, 784 F.2d 206, 211 (6th Cir. 1986), and the meeting by WAPA officials of their responsibility under the safety policy does not come within the scope of the discretionary function exception.

In *Mandel v. United States*, 793 F.2d 964 (8th Cir. 1986), the court affirmed a judgment for a plaintiff who was paralyzed when he dived into a swimming hole on National Park Service land. The Government had failed to use ordinary care to warn of submerged rocks, and instead a park ranger had actually directed the plaintiff to swim there.  Citing *Aslakson*, the court stated, at 793 F.2d 967-968:

> ... the discretionary function exception does not apply to governmental conduct that involves the execution of a previously adopted safety policy that is neither regulatory in nature nor in the nature of administrative decision-making grounded in social, economic, or political policy. ... "The judgment and decision-making involved in day-to-day management of a recreational area are not the sort of decision-making contemplated by the exemption."

The Eighth Circuit has found the discretionary function exception applicable in some other, factually dissimilar situations, including *C.R.S. v. United States*, 11 F.3d 791 (8th Cir. 1993), cited here by the Government--in which the military had negligently given multiple patients transfusions of HIV-infected blood--but it has never overruled or repudiated *Aslakson* and *Mandel*.  Its position is therefore consistent with that taken by other Federal courts.  The District of Columbia Circuit, in *Cope v. Scott*, *supra*, held that allegations of negligent road maintenance by the National Park Service were barred by the exception, but allegations of improper placement of warning signs about hazardous road conditions were appropriate for trial.  It explained the distinctions on which the applicable law turns, *id.* at 448-449, in language similar to that of *Aslakson* [emphasis added]:

> Determining whether a decision is "essentially political, social, or economic," ... is admittedly difficult, since nearly every government action is, at least to some extent, subject to "policy analysis." ... "Budgetary constraints," for example, "underlie virtually all government activity."  At oral argument, counsel for the government asserted that these underlying fiscal constraints should therefore exempt "virtually all government activity."  With the exception of discretion exercised by bad drivers, the government appears to argue that decisions that involve choice and the faintest hint of policy concerns are discretionary and subject to the exception.  ***This***

*approach, however, would not only eviscerate the second step of the analysis set out in Berkovitz and Gaubert, but it would allow the exception to swallow the FTCA's sweeping waiver of sovereign immunity."*

The ***Cope v. Scott*** opinion concluded that, with the Government having already decided to allow heavy use of the road by urban commuters and to place numerous warning signs along it, the Park Service "cannot argue that its failure to ensure that those steps are effective involves protected 'discretionary' decisions." *Id.* at 452.

In the Second Circuit, ***Andrulonis v. United States***, *supra*, reached a similar result with regard to the negligence of a Center for Disease Control laboratory director who failed to warn employees about unsafe conditions in rabies virus experiments. On the authority of the ***Andrulonis*** decision, ***Wright v. United States***, *supra*, denied summary judgment for the Government in a suit by a guest at a wedding ceremony in the West Point Cadet Chapel--a situation analogous to that of Mark Birke and the other invited guests of the F-4 Phantom II Society--who was injured when her high heel caught in a grate covered with a "runner" cloth. The court held, *id.* at 806, that "reasonable steps of a type determined by management to minimize risks of personal injury are necessary. Failure to take any such steps where feasible is negligent and not within the discretionary function exemption, even though the particular nature of the appropriate steps is discretionary."

***Bear Medicine v. United States***, *supra*, involving negligence in the training of loggers, reached the same conclusion; as the Ninth Circuit stated there, at 1215, "The decision to adopt safety precautions may be based in policy considerations, but the implementation of those precautions is not." The Third Circuit ruled similarly in ***Cestonaro v. United States***, *supra*, in regard to the specifics of lighting and warning on a parking lot.

Two other decisions by Federal District Courts are also especially pertinent here.  In ***Noel v. United States***, *supra*, civilian concessionaires were injured when their vending cart overturned at an air show open to the public on a naval air station.  Pursuant to 32 C.F.R. § 705.34, there was authority for the Navy to conduct open house events for the general public.  The Navy designated an officer responsible for "planning and coordinating the air show," who in turn designated a "crowd control officer ... with responsibility for developing a crowd control plan" even though there were no "statutes, regulations or directives" from the Department of Defense or the Navy pertaining to crowd control or safety during an air show.  Rejecting the Government's motion for dismissal or summary judgment and its argument that the decision not to place safety barriers around holes in the runway was motivated by a balancing of economic and public policy considerations--an argument indistinguishable from that of the Motion here--the court held, *id.* at 1420, 1421-1422**:**

> In general, safety related government decisions that are not motivated by policy considerations do not fall within the discretionary function. ... In this case, the Government's initial decision to allow the general public onto the tarmac to view the air show was probably rooted in broad public policy considerations.  However, this does not mean that all subsequent Government decisions that are related to the opening of the base are automatically also rooted in public policy considerations.  Allowing such a broad application of the discretionary function exception would, in effect, immunize almost all governmental activity from suit under the FTCA. ...

> Like *Summers* and *Aslakson,* the Government's initial decision to establish a crowd control plan, including its decision to assign a safety and security team at the ramp and Hangar One area to assist air show attendees, arguably falls within the discretionary function exception.  However, there is nothing in the record to indicate that the Government's allegedly negligent *execution* of its self-imposed crowd control plan involved a balancing of social, economic, or political policy considerations. ... The discretionary function exception is inapplicable to the Noels' claim that the Navy negligently executed its crowd control plan.

On March 20, 2009, the Eastern District of Louisiana held in the still-pending Hurricane Katrina consolidated cases, ***In re Katrina Canal Breaches Consolidated Litigation***, 2009 U.S.Dist.

LEXIS 26647, that the discretionary function exception would not apply to claims against the Army

Corps of Engineers actions for negligent acts subsequent to the initial design and construction of the

flood control project.  The court cited **Cope v. Scott**, **Bear Medicine** and **Andrulonis** among other

authorities for its conclusion, at 360, that "the decision to adopt safety precautions may be based in

policy considerations, but the implementation of those precautions is not.  Safety measures, once

undertaken, cannot be shortchanged in the name of policy."

The Government has argued at length (*see* pages 5-7 and 16-18 of its Memorandum, citing

its exhibits), that the Air Force's decisions with regard to the selection of the F-4 Phantom II Society

tour group's viewing site and the choice of the escort officers prior to the fatal events of October 19,

2006, were based on public policy or the balancing of military operations, community relations,

national security, convenience, and safety.  This argument may be true, as far as it goes, but it is

beside the point.  The issue is whether, once those decisions had been made under the applicable

regulations, the safety precautions that the Air Force, Major Marion and Captain Park actually took

and failed to take at the site to carry out the earlier decisions (as partially and selectively described

by the Government at pages 7-8 of its Memorandum), were themselves discretionary functions

within the scope of 28 U.S.C. § 2680(a)'s exception to the FTCA.  The Government discusses what

Major Marion and Captain Park did, but it does not mention what they failed to do**:** place temporary

barriers, tapes or warning cones to prevent the tour members from standing too close to Eglin

Boulevard, and provide sufficient uniformed personnel to observe, supervise and protect the entire

group of eighty-nine persons (after Major Marion departed, only Captain Park remained with them).[3]

---

[3]

Nor did they use a microphone to make sure all the tour members could actually hear the officers' warning, nor advise motorists approaching the site about the pedestrians near the road.

The tour escorts' acts and omissions on October 19, 2006, were not the type of discretionary functions covered by the exemption, whose purpose "when properly construed" is to protect only "decisions based on considerations of public policy."  *United States v. Gaubert*, *supra* at 323.  The case law cited by the Government on the general principles of the applicable law do not support the conclusion that the acts and omissions of Major Marion and Captain Park on October 19, 2006, were such discretionary functions,[4] and the authorities cited by Plaintiff here quite strongly show otherwise.

---

[4]   Of the two Eighth Circuit cases cited by the Government on this issue, only ***C.R.S.***, *supra*, actually held the discretionary function applicable on the facts presented there; but ***Appley Brothers v. United States***, 164 F.3d 1164 (8th Cir. 1999), involving negligent failure to inspect a grain warehouse, did not.  The leading Supreme Court case cited by the Government, ***Berkovitz v. United States***, 486 U.S. 531 (1988), also did not find the discretionary function exception to apply to the facts of a case involving vaccine licensing, although the exception was held applicable in ***United States v. S. A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)***, 467 U.S. 797 (1984), to aircraft compliance inspections, in ***United States v. Gaubert***, *supra*, to bank regulations, and in ***Dalehite v. United States***, 346 U.S. 15 (1953), to fertilizer specifications; the reference to 28 U.S.C. § 2680(a) in ***Boyle v. United Technologies Corp.***, 487 U.S. 500 (1988), a defective design products liability case against a private defense contractor, was *dictum*.  The Government's citations to cases from other Federal Circuits and District Courts are similarly distinguishable and divided on the applicability of the exception:  it was denied in ***Dickerson, Inc. v. United States***, 875 F.2d 1577 (11th Cir. 1989), for hazardous waste disposal; ***Alabama Electric Cooperative, Inc. v. United States***, 769 F.2d 1523 (11th Cir. 1985), for engineering of river dikes; ***Kennewick Irrigation District v. United States***, 880 F.2d 1018 (9th Cir. 1989), for construction (as opposed to design) of a canal; ***Aretz v. United States***, 604 F.2d 417 (5th Cir. 1979), for negligent safety classification of military flares; and ***Matthews v. United States***, 720 F.Supp. 1535 (D.Kan. 1989), for handling of explosives. On the other hand, it was held applicable in ***Feyers v. United States***, 749 F.2d 1222 (6th Cir. 1984), to railyard safety training and inspection; ***Begay v. United States***, 768 F.2d 1059 (9th Cir. 1985), to radiation exposure in uranium mining; ***OSI, Inc v. United States***, 285 F.3d 947 (11th Cir. 2002), to groundwater contamination; ***Reeves v. United States***, 809 F.Supp. 92 (N.D.Ga. 1992), to law enforcement; ***Miller v. United States***, 710 F.2d 656 (10th Cir. 1983), to Federal supervision of state highway design; ***Sydnes v. United States***, 523 F.3d 1179 (10th Cir. 2008), to employee termination; ***Cisco v. United States***, 768 F.2d 788 (7th Cir. 1985), to landfill control; ***Myslakowski v. United States***, 806 F.2d 94 (6th Cir. 1986), to surplus vehicle sales; ***Fortney v. United States***, 714 F.Supp. 207 (W.D.Va. 1989), to an Army safety manual for hazardous material storage; and ***Fanoele v. United States***, 975 F.Supp. 1394 (D.Kan. 1997), to courthouse security.

The Government's only citation which in any way resembles the situation here is *Ayer v. United States*, 902 F.2d 1038 (1st Cir. 1990), where the civilian plaintiff was injured in a fall while participating in a tour of an underground missile launch chamber at Vandenburg Air Force Base. Ayer claimed the Air Force should have changed the design of the missile launch chamber to make it safe for visitors and given more adequate warnings to the tour group. The court held the discretionary function exception applied with regard to the facility's design, which involved actual military considerations. But it then addressed the merits of the warning issue, rather than dismissing them for lack of jurisdiction under 28 U.S.C. § 2680(a), and granted the Government summary judgment on that issue because Ayer produced no evidence the warnings were actually inadequate. The *Ayer* case therefore tends to support Plaintiff's position here, rather than to show that everything the Air Force did with regard to tour security automatically fell within the discretionary function exception.

Plaintiff is entitled to a trial in order to prove that the specific acts and omissions of Major Marion and Captain Park at the tour site along Eglin Boulevard on October 19, 2006, were negligent and inadequate to comply with the requirements of Florida law.

### Conclusion

For the foregoing reasons, the Government's Partial Motion to Dismiss should be overruled in all respects.

-22-

/s/ Frank J. Kaveney
FRANK J. KAVENEY
United States District Court Registration
         Number 3527
Attorney for Plaintiff
133 South 11th Street, Suite 350
St. Louis, Missouri 63102
Telephone: (314) 231-5559
Fax: (314) 231-9552
E-mail: frankjkaveney@yahoo.com


## Certificate of Service

      The undersigned certifies that he is the attorney of record for Plaintiff and that on this 15th day of April, 2009, he filed this instrument electronically with the Court and caused a copy of this instrument to be served by E-mail and a copy to be served by first-class United States Mail, postage prepaid, upon the following counsel of record for Defendant:

    Catherine L. Hanaway, United States Attorney
    Nicholas P. Llewellyn, Assistant United States Attorney
    Chief, Civil Division
    Thomas F. Eagleton U. S. Courthouse
    111 South 10th Street, 20th Floor
    St. Louis, Missouri 63102
    Telephone: (314) 539-7637
    Fax: (314) 539-2777
    E-mail: nicholas.llewellyn@usdoj.gov

          /s/ Frank J. Kaveney