UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA MARIE BAIN BIRKE, etc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:08CV1607MLM |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before the court is the Partial Motion to Dismiss filed by Defendant the United States of American ("Defendant"). Doc. 13. Plaintiff Angela Marie Bain Birke ("Plaintiff") filed a Response. Doc. 16. Defendant filed a Reply. Doc. 18. Plaintiff filed a Sur-Reply. Doc. 20. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). Doc. 4.

## BACKGROUND

Plaintiff filed a Complaint for Wrongful Death pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq., in which she alleges that this court has jurisdiction pursuant to 28 U.S.C. § 1346(b)(1) in that the death of Mark H. Birke was caused by the negligent and wrongful acts or omissions of employees of Defendant, in particular, the United States Air Force, while acting within the course and scope of their employment and line of duty under circumstances in which Defendant, if a private person, would be liable in accordance with the laws of the place where the acts or omissions occurred.

In particular, Plaintiff alleges that she was the wife of Mark H. Birke; that she brings this cause of action pursuant to the Florida Wrongful Death Act, Fla. Stat. § 768, on behalf of persons entitled to recover for Mark H. Birke's death under that statute; that on Thursday, October 19, 2006,

Mark H. Birke, as member of the F-4 Phantom II Society (the "Society"), was on a tour bus which, at the instruction of tour escorts designated by the United States Air Force, parked on a dirt or gravel road on Eglin Boulevard, at Eglin Air Force Base, near Pensacola, Florida; that "[i]n the prior planning of the tour, ... the senior Air Force officer assigned to serve as the Society's tour escort and guide had expressed concern about the safety of the prospective location of the tour group adjacent to Eglin Boulevard due to road traffic; that the designated Air Force tour escorts instructed the passengers to exit the bus at that location; that at approximately 9:30 a.m. on Thursday, October 19, 2006, an automobile, owned by Airman Uyen Thach and operated by Airman Brett Jakubowski, the automobile's sole occupant, "drove off Eglin Boulevard onto the grassy area where some 89 members of the tour group were situated"; that the automobile driven by Airman Jakubowski struck Mark H. Birke and another civilian; that Mark H. Birke died as a result of injuries he suffered; that prior to the accident Airman Jakubowski was ordered to perform more strenuous manual labor at the conclusion of each day's regular duties at the base hospital; that at the time of the accident Airman Jakubowski was in his ninth consecutive 12-hour work-day; that prior to the accident Airman Jakubowski's supervisor should have known that Airman Jakubowski was becoming progressively more tired at work after he began serving his extra duty punishment; that on the morning of the accident Airman Jakubowski drove Airman Thach's automobile, with her permission, from his dormitory to his duty station at the Eglin Air Force Base Hospital; that after arriving at the Base Hospital on October 19, 2006, at 7:00 a.m., Airman Jakubowski obtained his supervisor's permission to pick up Airman Thach from her quarters on Eglin Air Force Base and bring her back to the Base Hospital, where she also worked; that Airman Thach's supervisor had given her permission to report to work later than usual on October 19, 2006, because she was driving the Commander of the Base Hospital to Tyndall Air Force Base that day and the supervisor "did not want Airman Thach to become overly tired and fall

asleep" when driving the Commander to Tyndall Air Force Base; and that Airman Jakubowski was to resume his duties at the Eglin Air Force Base Hospital after he completed his mission of picking up Airman Thach and driving her the Eglin Air Force Base Hospital so she could perform her duties there and drive the Commander to and from Tyndall Air Force base.

Plaintiff seeks damages on three theories: (1) that Air Force personnel carelessly and negligently exercised improper control over the tour group which was comprised of invitees to Eglin Air Force Base by selecting a location immediately adjacent to a busy highway as the site from which Society members were to view aircraft flight operations; (2) that Airman Jakubowski was negligent in the operation of the motor vehicle he was driving when he struck Mark H. Birke and proximately caused his death; and (3) that the supervisors of Airman Jakubowski were negligent in regard to the supervision of Airman Jakubowski in the course and conduct of Airman Jakubowski's employment and line of duty. Plaintiff further alleges that as a direct and proximate result of the alleged negligence of Defendant's agents, servants and employees, Mark H. Birke was placed in a position of peril in which he was struck by the vehicle driven by Airman Jakubowski and that as a direct and proximate result of the negligence of Defendant's agents, servants and employees, Mark H. Birke died. Plaintiff claims $9,500,000 in total damages.

Air Force Staff Sergeant Larrilyn B. Darif testified under oath that on August 13, 2006, Airman Jakubowski was charged with underage drinking; that, as a result, Airman Jakubowski received an "Article 15 and 30 days extra duty"; that the punishment was "handed down by [the] surgical operations squadron commander"; that Airman Jakubowski's punishment involved "working in the ER for 30 consecutive days"; that he was to work "from 1600 until 1900, throughout the week, and then from 0700 to 1900 on Saturday and Sunday, for 30 consecutive days"; that Airman Jakubowski spent three hours a day during the week doing extra duty and on weekends spent "12

3

hours in the ER"; that Staff Sergeant Darif's role in carrying out Airman Jakubowski's extra duties included "mak[ing] sure that he reported on time to his extra duties"; that Staff Sergeant Darif "let [Airman Jakubowski] get breakfast every morning"; and that prior to the accident on October 19, 2006, Airman Jakubowski "seemed more tired." Def. Ex. C at V-1.1 to V-1.8. In response to a question as whether Staff Sergeant Darif knew why Airman Jakubowski left work the morning of the accident, she testified that:

> [Airman Jakubowski] went to pick up his girlfriend from the dorm rooms, because he did extra duty that morning, and he borrowed her car to come to work, because he didn't have a car of his own, and normally they rode together to work every morning. And he was going to the dorms to pick her up and bring her back to the hospital. And I believe he accidentally left his cell phone with her the night before, so in exchange of the car, he was going to get his cell phone from her also.

Def. Ex. C at V.1.8.

Additionally, Staff Sergeant Darif testified that on the morning of the accident, Airman Jakubowski asked her for permission to pick up his girlfriend as soon as he arrived, at about 7:00 a.m.; that Airman Jakubowski reported to Staff Sergeant Thomas that morning, whose duty it was to give Airman Jakubowski "additional duties and watch over him"; that when Airman Jakubowski asked her to pick up his girlfriend on the morning of October 19, 2006, Staff Sergeant Darif "told him to just go get her and bring her back to the hospital, make sure she gets her car and you get your cell phone"; and that prior to his leaving the hospital at about 9:20 or 9:25 a.m., Airman Jakubowski came to Staff Sergeant Darif and asked if it was "all right if I go now to pick Uyen up" and Staff Sergeant Darif said that "it was all right because the schedule was okay." Def. Ex. C at V-1.12, V-1.15.

In the pending Partial Motion to Dismiss, filed pursuant to Rule 12(b)(1), Defendant contends that this court does not have jurisdiction under the FTCA because the FTCA's jurisdictional requirement of a federal employee's acting within the scope of employment is not met, 28 U.S.C. §

4

1346(b)(1), and because the discretionary function exception to the FTCA applies, 28 U.S.C. § 2680(a).[1]

## STANDARD FOR MOTION TO DISMISS FOR LACK OF JURISDICTION

The party seeking to invoke the jurisdiction of a federal court has the burden of establishing that jurisdiction exists. See Mountaire Feeds, Inc. v. Argro Impex, S.A., 677 F.2d 651, 653 n.3 (8th Cir. 1982); Piper v. Kassel, 817 F. Supp. 802 (E.D. Mo. 1993). "'The Court may rely on pleadings and affidavits alone or require that an evidentiary hearing be held.'" Id. at 804 (quoting Cantrell v. Extradition Corp. of America, 789 F. Supp. 306, 308 (W.D. Mo. 1992)).

In regard to a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction in a FTCA case, the Eighth Circuit has held as follows:

> "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction - its very power to hear the case - there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist."

Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990) (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir.1977)).

Further, in regard to subject matter jurisdiction, the Eighth Circuit held in Osborn, 918 F.2d at 729, that "[j]urisdictional issues, whether they involve questions of law or of fact, are for the court to decide." "[B]ecause jurisdiction is a threshold question, judicial economy demands that the issue

---

[1] In the pending Partial Motion to Dismiss Defendant addresses Airman Jakubowski's alleged negligence and the alleged negligence on the part of Air Force Personnel in regard to planning the Society's visit and choosing the Eglin Boulevard location. Defendant does not address Plaintiff's allegations of negligent supervision and, hence, the Partial Motion to Dismiss does not address the conduct of Staff Sergeant Darif and others who supervised Airman Jakubowski. See Doc. 17 at 1, n.1.

be decided at the outset rather than deferring it until trial, as would occur with denial of a summary judgment motion." Id. (citing Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981) (holding that a district court has power to decide disputed factual issues in a motion under Rule 12(b)(1)).

## LEGAL FRAMEWORK UNDER THE FEDERAL TORT CLAIMS ACT

Under the FTCA the United States has waived its sovereign immunity. As such, the United States may be sued for damages:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

The FTCA grants federal district courts jurisdiction to hear claims bought against the United States pursuant to the FTCA. "A threshold requirement to establish jurisdiction under the FTCA is that the federal employee must have been acting within the scope of his employment when the tort was committed." Johnson v. United States, 534 F.3d 958, 963 (8th Cir. 2008) (citing Primeaux v. United States, 181 F.3d 876, 878 (8th Cir.1999)). "Scope of employment questions are governed by the law of the state where the alleged tortious acts took place." Id. (citing St. John v. United States, 240 F.3d 671, 676 (8th Cir. 2001) (citing Brown v. Armstrong, 949 F.2d 1007, 1012 n. 7 (8th Cir.1991)). See also Primeaux, 181 F.3d at 878; Robbins v. States, 722 F.2d 387 (8th Cir. 1983). "'However, FTCA claims are strictly limited to a scope of employment analysis, regardless of state law doctrines of respondeat superior and apparent authority.'" Johnson, 534 F.3d at 963 (quoting St. John, 240 F.3d at 676) (citing Primeaux, 181 F.3d at 878). Thus, "if state law extends a private employer's vicarious liability to employee conduct not within the scope of employment, the

government's FTCA liability remains limited to employee conduct within the scope of employment, as defined by state law." Primeaux, 181 F3d at 878.

If the federal employee was not acting within the scope of his or her employment, federal courts do not have subject matter jurisdiction over a claim brought under the FTCA. Johnson, 534 F.3d at 963 at 963-64. Indeed, the determination of whether a federal court has subject matter jurisdiction in a claim brought under the FTCA is "'intertwined' with the merits of [the] lawsuit." Id. at 963. Further, "whether an employee's actions are within the scope of [his] employment is a question of fact." Id. "[T]he factual nature of this inquiry," however, is not "'so bound up with the merits that a full trial on the merits' is necessary to resolve the issue." Id. at 963-64 (quoting Crawford v. United States, 796 F.2d 924, 929 (7th Cir. 1986)). In this regard the Eighth Circuit has reasoned that "the issue whether [the employee's] conduct was within the scope of his employment is unrelated to whether [the employee's] conduct was negligent, which is the most important issue on the merits." Id. at 964. Thus, pursuant to a motion to dismiss for lack of jurisdiction a cause of action brought under the FTC, a federal court may determine whether the requirement of the federal employee's acting within the scope of his or her employment is met. See id. at 963-64.

The tortious act[s] in the matter under consideration took place in Florida. Thus, the court will consider Florida law applicable to a determination of the scope of employment. Under Florida law an employer is not an "absolute guarantor and strictly liable for any acts committed by his employee against any person under any circumstances." K.M. ex rel. D.M. v. Publix Super Mkts., Inc., 895 So.2d 1114, 1119 (Fla. Dist. Ct. App. 2005) (quoting Garcia v. Duffy, 492 So.2d 435, 439 (Fla. Dist. Ct. App. 1986)). Florida law provides, however, to establish employer liability based on its employee's acting within the scope of his employment, a plaintiff must show that: "'(1) the conduct is of the kind the employee is hired to perform, (2) the conduct occurs substantially within

7

the time and space limits authorized or required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master.'" Fernandez v. Florida Nat. College, Inc., 925 So.2d 1096, 1100 (Fla. Dist. Ct. App. 2006) (quoting Sussman v. Fla. E. Coast Props., Inc., 557 So.2d 74, 75-76 (Fla. Dist. Ct. App. 1990)). See also United Techs. Corp. v. Mazer, 556 F.3d 1260 (11th Cir. 2009); St. Paul Guardian Ins. Co. v. United States, 117 F. Supp.2d 1349, 1354 (S.D. Fla. 2000); Ashworth v. United States, 772 F.Supp. 1268, 1271 (S.D. Fla. 1991).

The FTCA includes several exceptions to its waiver of immunity, including the discretionary function exception as set forth in 28 U.S.C. § 2680(a). Hinsley v. Standing Rock Child Protective Servs., 516 F.3d 668, 672 (8th Cir. 2008). The purpose of the discretionary function exception "is to make sure that government agencies and employees are free to make the policy-related decisions that their jobs require, without the fear that they or the government may be sued whenever someone thinks they have decided badly, and without the added cost to taxpayers that frequent lawsuits would bring." Claude v. Smola, 263 F.3d 858, 859 (8th Cir. 2001). In regard to determining when the discretionary function exception is applicable to a claim brought pursuant to the FTCA, the Eighth Circuit held in Hinsley, 516 F.3d at 672-73:

> The purpose of the discretionary function exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." United States v. Gaubert, 499 U.S. 315, 323, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1990). ... .
>
> We employ a two-part test to determine whether the discretionary function exception applies. See Riley, 486 F.3d at 1032 (citing Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). "First, the conduct at issue must be *discretionary, involving 'an element of judgment or choice*,'" id. (quoting Berkovitz, 486 U.S. at 536, 108 S.Ct. 1954), and not controlled by mandatory statutes or regulations, Gaubert, 499 U.S. at 328-29, 111 S.Ct. 1267. If the employee violated a mandatory statute, regulation, or policy, the conduct does not involve an element of judgment or choice, and therefore, the conduct is not sheltered from liability under the discretionary function exception. See Riley, 486 F.3d at 1032. If, on the other hand, no mandate exists, the action is considered a product of judgment or choice and the first step is satisfied. Dykstra, 140 F.3d at 795. Under the second

8

part of the test, we determine whether the judgment or choice was based on considerations of public policy. Gaubert, 499 U.S. at 325, 111 S.Ct. 1267. If the challenged action was *based on a judgment grounded in social, economic, or political policy, the discretionary function exception applies*. Dykstra, 140 F.3d at 795; see also Gaubert, 499 U.S. at 325, 111 S.Ct. 1267.

(emphasis added).

The court in Hinsley, 516 F.3d at 673 n.7, further held:

The individual government employee need not have consciously considered any policy factors. C.R.S. by D.B.S. v. United States, 11 F.3d 791, 797-98 (8th Cir.1993). "The judgment or decision need only be susceptible to policy analysis, regardless of whether social, economic, or political policy was ever actually taken into account, for the exception to be triggered." Demery v. U.S. Dep't of Interior, 357 F.3d 830, 833 (8th Cir. 2004). "The *focus* of the inquiry is not on the agent's subjective intent in exercising the discretion ..., but on *the nature of the actions taken and on whether they are susceptible to policy analysis*." Gaubert, 499 U.S. at 325, 111 S.Ct. 1267.

(emphasis added).

It is well established that "[t]he contours of the discretionary function cannot be defined with precision" and that "each case must be analyzed individually based upon relevant criteria in determining whether the acts of government employees are protected from liability under section 2680(a)." Aslakson v. United States, 790 F.2d 688, 691 (8th Cir. 1986). To one extreme, where the government clearly has *broad discretion,* the discretionary function applies. See Aslakson, 790 F.2d at 692 (citing United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797 (1984)). See also Walters v. United States, 474 F.3d 1137 (8th Cir. 2007) (holding that the discretionary function exception applied where applicable statutes allowed government employees to take budgetary considerations into account in regard to road maintenance; the plaintiffs alleged they were injured as a result of the poor condition of a road on an Indian reservation); Demery v. United States Dept. of Interior, 357 F.3d 830, 833-34 (8th Cir. 2004) (where the plaintiff alleged that his wife died as a result of the defendant's failure to maintain an aeration system on a lake, holding that the discretionary function exception applied because there were "no specific or clear [] policy

9

statements regarding aerated lakes or the necessity or adequacy of warning signs to be located near them"; "[t]herefore, decisions regarding the maintenance of the aeration system, whether warnings of the open water would be posted, and the method and manner of those warnings were discretionary").

On the other hand, where an allegedly negligent government agency is charged with the responsibility of *implementing an established policy*, the discretionary function exception does not apply. Mandel v. United States, 793 F.2d 964, 967 (8th Cir. 1986) (declining to apply the discretionary function exception to the park service's alleged failure to warn of a submerged rock because park service personnel failed to comply with a previously adopted safety policy which was neither regulatory in nature nor in the nature of administrative decision-making grounded in social, economic, or political policy."). Thus, in Aslakson, 790 F.2d at 692, the Eighth Circuit did not apply the discretionary function exception where government "inspectors were not called upon to make discretionary regulatory judgments. Rather, they had a number of precise inspections to perform which involved no judgment concerning agency policy." (citing McMichael v. United States, 751 F.2d 303, 307 (8th Cir. 1985)).

It becomes less clear whether or not the discretionary function exception applies where a regulatory scheme exists but where there is discretion within that scheme. In this regard, the Supreme Court acknowledged in United States v. Gaubert, 499 U.S. 315, 325 n.7 (1991), that an act performed within the scope of employment may be discretionary but not "based on the purposes that [a] regulatory regime seeks to accomplish." Under such circumstances the discretionary function exception does not apply. Id. For example, in Aslakson, 790 F.2d at 693, the government claimed that the discretionary function exception applied where the government agency was bound by regulations to minimum vertical clearance of power lines. The government further claimed that the

decision regarding the safety of the power lines was within the scope of the exception. The Eighth Circuit rejected the government's argument and held that "such an expansive interpretation would result in the exception swallowing the rule. This view would immunize from judicial review all government activity except the most ministerial acts." (citing Griffin v. United States, 500 F.2d 1059, 1063-64 (3d Cir. 1974)). Significantly, the Eighth Circuit further held in Aslakson, 790 F.2d at 693, that "[w]here the challenged *governmental activity involves safety considerations under an established policy* rather than the balancing of competing public policy considerations, the rationale for the exception falls away and the United States will be held responsible for the negligence of its employees." (emphasis added).

In cases where it is not clear whether the discretionary function exception applies, it is helpful to consider whether the decision which a plaintiff is alleging as the basis of negligence was on the "policy or planning level" or on the "operational level." Mandel, 793 F.2d at 967-68. "[D]ecisions on the policy or planning level are generally protected by the discretionary function exception, whereas decisions made at the operational level are not." Id. Thus, the Eighth Circuit held in Mandel, 793 F.2d at 968, that "[t]he judgment and decision-making involved in day-to-day management of a recreational area" were on the operational level, and hence not protected under the discretionary function exception. Id. at 968 (holding that distinguishing between the policy or planning level and the operational levels of government action "is not always easy" but that the sort of decision making at issue was "'not the sort of decision-making contemplated by the exemption'") (citing United States v. S.A. Empresa De Viacao Aerea Rio Grandense, 467 U.S. 797 (1984) and (quoting Ducey v. United States, 713 F.2d 504, 515 (9th Cir. 1983)).

For a complaint to survive a motion to dismiss based on the discretionary function exception to federal subject matter jurisdiction under the FTCA, the complaint "must allege facts which would

11

support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." Gaubert, 499 U.S. 315 at 324-25.

## DISCUSSION

**A.     Scope of Employment:**

As stated above, the United States waives its sovereign immunity under the FTCA only where the alleged tortfeasor was acting within the scope of his employment at the time he engaged in the allegedly negligent act. Defendant contends that, to the extent Plaintiff's Complaint alleges negligent conduct on the part of Airman Jakubowski, the Complaint should be dismissed because the scope of employment requirement is not met in regard to Airman Jakubowski's conduct. First, the court will consider, pursuant to applicable Florida law, whether the conduct at issue was of the kind that Airman Jakubowski was hired to perform. See Fernandez, 925 So.2d at 1100; United Techs. Corp., 556 F.3d 1260; Ashworth, 772 F.Supp. at 1271. In Ashworth, 772 F.Supp. at 1271, brought pursuant to the FTCA, the Seaman who was the alleged tortfeasor, was moving his belongings from one duty station to another at the time he had the accident which was the subject of that case. The Seaman "had requested and received authorization to conduct a Do-It-Yourself (DITY) move of his personal belongings, and he had also been authorized to effect his change of duty station by privately owned conveyance." The Seaman had travel orders for a particular time period. See id. Under such circumstances, applying Florida law pursuant to a scope of employment analysis, the court found that the Seaman was engaged in the conduct of the kind he was hired to perform. Additionally, in St. Paul Guardian, 117 F.Supp.2d at 1352, pursuant to military orders, the alleged tortfeasor, a Navy reservist, was driving his own vehicle to report for two-week active duty training at the time he had the accident which was the subject of that case. At the time of the accident in St. Paul Guardian, the Navy reservist was being paid for travel time. Upon concluding that the Navy reservist's conduct was

of the kind he was employed to perform pursuant to a scope of employment analysis under Florida law, the district court considered that the Seaman "was employed to follow orders, including orders directing him to report" for duty; that he was being paid for his time; and that he was on duty status and subject to the Military Code of Justice. Id. at 1354 (citing Ashworth, 772 F.Supp. at 1272).

The undisputed facts in the matter under consideration establish that, at the time of the October 19, 2006 accident, Airman Jakubowski was on active duty on the military base to which he was assigned and that the accident took place during the course of a normal workday during which Airman Jakubowski sought and received permission to pick up Airman Thach. Further, Airman Thach did not drive Airman Jakubowski to work at the base hospital on the morning of the accident, as was her usual practice, because she had been instructed to arrive for work late. Although Airman Jakubowski was also going to retrieve his cell phone from Airman Thach's room, the primary purpose of his leaving the base hospital was to pick up Airman Thach and bring her to the base hospital. Under such circumstances the court finds that at the time of the accident on October 19, 2006, Airman Jakubowski was engaged in conduct of the kind he was hired to perform. See St. Paul Guardian, 117 F.Supp.2d at 1352; Ashworth, 772 F.Supp. at 1272; Fernandez, 925 So.2d at 1100. The fact that Airman Jakubowski was driving a private vehicle does not detract from the court's finding in this regard. See St. Paul Guardian. 117 F.Supp.2d at 1352.

Second, Airman Jakubowski's conduct substantially occurred within the time and space limits authorized or required by his job in the military and assignment to Eglin Air Force Base. See Fernandez, 925 So.2d at 1100. Indeed, on the morning of the accident Airman Jakubowski had already reported to his supervisor at Eglin Air Force Base Hospital; he obtained permission to pick up Airman Thach to bring her to work at the hospital; and he was on his way to do so. Further, pursuant to his having received punishment for underage drinking, as evidenced by Staff Sergeant

13

Darif's testimony, Airman Jakubowski's time, work schedule, and assignments were monitored by his supervisors.

Third, because Airman Jakubowski was picking up Airman Thach, who, pursuant to orders, was to report for work later than usual, Airman Jakubowski's driving the vehicle was activated, at least in part, for the purpose of serving the Air Force. See id. As such, the court finds, considering Florida law, that Plaintiff has met her burden, pursuant the FTCA, to establish that Airman Jakubowski was acting within the scope of his employment at the time of the accident on October 19, 2006, which caused the death of Mark H. Birke. See Osborn, 918 F.2d at 729-30; St. Paul Guardian, 117 F.Supp.2d at 1352; Ashworth, 772 F. Supp. at 1272.

**B.     Discretionary Function Exception:**

Defendant alleges that the discretionary function exception to the United States's waiving its sovereign immunity under the FTCA applies to the conduct of Air Force personnel related to the location selection for the Society's viewing aircraft at Eglin Air Force Base. Defendant further contends that this exception is applicable to conduct of Air Force personnel directing and escorting the members of the Society's tour group. The court will consider whether the discretionary function exception applies to the Air Force's conduct in this regard.

Major Craig Marion testified before an Air Force investigatory commission that he spoke with other persons prior to making the arrangements for the Society's tour in an effort to provide assistance to the Society on the day of its tour. In particular, when asked how he went about choosing the site for the tour, Major Marion testified that he "originally contacted the Chief of Airfield Operations to co-ordinate locations that would fit the needs/desires of the group, and through a long series of closed doors locations changed." Major Marion further testified that the initial location was "turned down through higher powers than [himself]"; that alternate locations were

14

"overcome by availability of government busses due to the exercise"; and that three other locations were next chosen, one of which was the Elgin Boulevard location. Major Marion summarized that there were four possible locations; that site one was rejected due to the lack of government busses; that site two was rejected because it was "wide open," with "no shade"; that it came down to a choice between locations three and four; that he drove by locations three and four; that the decision about which location was to be used was coordinated between Major Marion and Captain Park; that the fourth site, the Eglin Boulevard location, was chosen; that he and Captain Park had a misunderstanding as to which side of Eglin Boulevard was the site of the fourth location; and that until two days prior to the tour Major Marion incorrectly thought the site on Eglin Boulevard was in the grass north of the road. Def. Ex. J at V-5.7 to V-5.10.

Air Force Instruction ("AFI") 35-101 at 1.1 states that:

This directive conveys the policies which allow commanders and Public Affairs professionals to deliver truthful, credible, accurate and timely information to key audiences in order to enhance their understanding and appreciation for Air Force capabilities and contributions to national security, while maintaining due regard for privacy and communication security. ... It provides Public Affairs policy and guidelines for all Air Force military and civilian personnel ... .

AFI 35-101 further states:

1.12.1.1. Air Force policy is all Public Affairs programs will be designed for the purpose of increasing the awareness and understanding of all Americans concerning:
...
    1.12.1.3. The day-to-day activities of the Air Force and its capabilities
    as an instrument of national policy.

Chapter 8, Community Relations, of AFI 35-101 at 8.1, states that the purpose of the Air Force's Community Relations Programs is to "enable commanders to enhance morale, public trust, and support. ... Through active programs, the Air Force demonstrates it is a community partner and responsible steward of resources."

The actions of the Air Force in assisting the Society and choosing the Eglin Boulevard location for the Society to view aircraft were grounded in Air Force policy directed at enhancing the public's understanding and appreciation for the Air Force as set forth in AFI 35-101. Further, the record before this court does not reflect that AFI 35-101 includes specific directives regarding tours of Air Force bases. Thus, AFI 35-101 gives broad discretion to Air Force Personnel in regard to its implementation. However, the discretion at issue in the matter under consideration, facilitating the Society's tour and choosing a location for the Society to observe aircraft, did not itself entail policy considerations, nor is the discretion at issue susceptible to a policy analysis. See Gaubert, 499 U.S. at 324-25; Hinsley, 516 F.3d at 673 n.7. Rather, the discretion involved safety considerations apart from and/or not directly related to the purposes which AFI 35-101 sought to accomplish. See Gaubert, 499 U.S. at 325 n.7; Mandel, 793 F.2d at 967-68; Aslakson, 790 F.2d at 693. Additionally, the discretion afforded Air Force personnel in facilitating the tour and choosing a location for the Society to observe aircraft is correctly characterized at the operational level as it involved the "day-to-day management" of Eglin Air Force Base. See Mandel, 793 F.2d at 968. The decision-making involved in facilitation the Society's tour and choosing a location for the Society to view aircraft is the not sort of decision-making that the discretionary function exception to the FTCA contemplated. See id. The court finds, therefore, that the discretionary function exception to this court's having subject matter jurisdiction under the FTCA is not applicable. As such, the court further finds that Defendant's Partial Motion to Dismiss should be denied in its entirety and that the court has subject matter jurisdiction.

## CONCLUSION

For the reasons articulated above the court finds that Defendant's Partial Motion to Dismiss should be denied in its entirety. In particular, the court finds that Airman Jakubowski was within the scope of his employment at the time of the accident on October 19, 2006. The court further finds that the discretionary function exception does not apply to allegations that Air Force personnel were negligent in regard to the Society's tour of Eglin Air Force Base. As such, the court finds that it has subject matter jurisdiction over Plaintiff's claims.

Accordingly,

**IT IS HEREBY ORDERED** that the Partial Motion to Dismiss filed by Defendant is **DENIED**; Doc. 13

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this <u>8th</u> day of June, 2009.